**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CHANDAN PANDA, *et al.,*

                            Plaintiffs,

v.                                                              CIVIL NO. 1:20-01907-KBJ

CHAD WOLF, Acting Secretary
of Homeland Security, *et al*.,

                            Defendants.

**PLAINTIFFS' RESPONSE TO THE COURT'S ORDER**
**REGARDING PROPOSED TRANSFER TO JUDGE MEHTA**

Plaintiffs file this response to the Court's Minute Order of July 30, 2020, requesting

briefing on the issue of whether to transfer this case to Judge Mehta in light of the apparent

overlap between this civil action and *Gomez v. Trump*, Civil No. 20-1419 (D.D.C.).  For the

reasons detailed below, Plaintiffs respectfully oppose any transfer of their case or consolidation

with *Gomez v. Trump*, which differs on several significant points from the facts and claims that

Plaintiffs raise in this case.

**A.  The *Panda* Civil Action Was the First to Challenge Proclamation 10052**

As an initial matter, to the best of counsel's knowledge, the plaintiffs in this case were the

first to challenge Proclamation 10052.  Plaintiffs filed their complaint on July 14, 2020,

challenging Proclamation 10052 as *ultra vires* and claiming that Defendants' application of the

Proclamation to the H-1B and H-4 non-immigrant Plaintiffs is contrary to the Immigration and

Nationality Act, as amended (INA), and the Administrative Procedure Act (APA).  *See* Compl.,

ECF No. 1, ¶¶ 1963-2005.  Plaintiffs in this case also raise equal protection and due process

claims.  *Id*. ¶¶ 2006-2019.  One day after Plaintiffs filed their complaint, on July 15, 2020, they

filed a motion for a preliminary injunction based on four counts in their complaint.  *See* ECF No.

3 (Motion); ECF No. 3-1 at 36-49 (Memorandum).  On July 20, 2020, Plaintiffs filed an amended memorandum in support of their motion for a preliminary injunction.  *See* ECF No. 8 (corrections and amendments marked in redline).

At the time Plaintiffs in this case filed their complaint and motion for a preliminary injunction, the plaintiffs in *Gomez v. Trump* had not yet filed their amended complaint challenging Proclamation 10052.  The *Gomez* plaintiffs' original complaint (ECF No. 1), filed on May 28, 2020, challenged an earlier Proclamation issued on April 22, 2020.  Because that earlier Proclamation of April 22, 2020, did not (and could not) involve the suspension of entry of H-1B or H-4 non-immigrants, the claims in the original *Gomez* complaint did not encompass any of the claims raised by Plaintiffs in this case.  Rather, the *Gomez* plaintiffs first challenged Proclamation 10052 in their amended complaint on July 17, 2020 (ECF No. 46), after Plaintiffs in this case filed their complaint and motion for a preliminary injunction.  For that reason, Plaintiffs' counsel in this case properly indicated on the civil cover sheet (ECF No. 1-1 at 2) when the complaint was filed that there were no related cases.  *See* Local Rule 40.5(a)(3), (b)(2). This case was then randomly assigned to Judge Jackson.  *See* Local Rule 40.3(a).

**B.  Random Assignment of Cases is Preferred**

As a general rule, new cases are randomly assigned to judges in this district.  *See* Local Rule 40.3(a); *Tripp v. Executive Office of the President*, 196 F.R.D. 201, 202 (D.D.C. 2000). Random assignment "ensure[s] greater public confidence in the integrity of the judicial process[,] . . . guarantees fair and equal distribution of cases to all judges, avoids public perception or appearance of favoritism in assignments, and reduces opportunities for judge-shopping."  *Tripp*, 196 F.R.D. at 202.  However, the Local Rules provide for an exception to random assignment in related cases.  *See* Local Rule 40.5.  The Local Rules define "related" civil

cases as those that relate to common property, involve common issues of fact, grow out of the same event or transaction, or involve the validity or infringement of the same patent. *See* Local Rule 40.5(a)(3)(i)-(iv); *Trump v. Comm. on Ways & Means*, 391 F. Supp. 3d 93, 95 (D.D.C. 2019). The party requesting the related-case designation bears the burden of showing that the cases are related under the Local Rules. *See Dakota Rural Action v. Dep't of Agriculture*, 2019 U.S. Dist. LEXIS 55419, *4 (D.D.C. April 1, 2019). This burden is "heavy," because "[d]eviating from th[e] foundational principle" of random assignment "is appropriate only if the relationship between the two cases is certain." *Id*.

Neither this case nor the *Gomez* case involves property or patents. *See* Local Rule 40.5(a)(3)(i), (iv). Moreover, although some of the party defendants overlap in the two cases, that is not enough to trigger a related case designation. *See Comm. on Ways and Means*, 391 F. Supp. 3d at 97. Thus, the only issue is whether the two cases involve common issues of fact or grow out of the same event or transaction. *See* Local Rule 40.5(a)(3)(ii)-(iii). As outlined below, neither exception applies in this case to overcome the preference in favor of random assignment.

### C. The Underlying Facts in *Panda* and *Gomez* are Not Sufficiently Common

The Local Rules offer no guidance about how much factual overlap is needed, how similar the underlying facts must be, or what constitutes an event. *See Comm. on Ways and Means*, 391 F. Supp. 3d at 96. However, at least one judge in this district has interpreted common issues of fact to require that the underlying facts themselves be common. *See Dakota Rural Action*, 2019 U.S. Dist. LEXIS 55419, *6 (Howell, J.). It is not enough that the facts at issue in the two cases are of the same kind or type or that the cases pose similar questions dependent on a similar class of facts. *Id*. at *6-7. Consistent with that interpretation, in an

3

earlier case, another judge held that an agency's alleged, similar discrimination against two protected classes of person was not enough to relate the two cases involving those separate groups, despite allegations of similar misconduct. *See Keepseagle v. Glickman*, 194 F.R.D. 1, 3 (D.D.C. 2000) (alternative holding).

Under those interpretations of the Local Rule, the underlying facts in Plaintiffs' case here involving the effect of the Proclamation on individual Indian national H-1B and H-4 non-immigrants are not sufficiently common to the allegations in the *Gomez* case involving several individual plaintiffs challenging the suspension of immigrant and diversity visa issuance. Nor do the underlying facts in this case hold enough commonality with the facts in *Gomez* involving corporate or organizational plaintiffs challenging the suspension of J-1 visas, H-2B visas, and L-1 visas along with H-1B visas. In this case, the 171 Indian national Plaintiffs have approved skilled worker H-1B petitions, or are derivative beneficiaries of H-1B workers, who were recently residing in the United States in lawful non-immigrant status under petitions approved by the Department of Homeland Security. *See Panda* Am. Memo, ECF No. 8 at 25-30. The H-1B Plaintiffs have been working in the United States for their sponsoring United States employers and several have approved immigrant petitions that allow them to pursue permanent resident status. Each Plaintiff has substantial connections to the United States in terms of employment or family ties (or both).

Plaintiffs in *Panda* want to return to the United States to resume employment or reunite with family members (or both) based on approved H-1B petitions. However, they are prevented from doing so because of Defendants' application of Proclamation 10052 in withholding the adjudication of their non-immigrant visa applications. *See* 85 Fed. Reg. 38263, 38264-64 (June 25, 2020) (Proclamation 10052); Plaintiffs' Appendix (App'x) 220, 331, 648. As a result,

Plaintiffs are suffering immediate, irreparable harm in the form of lost income.  *See* Singh App'x 344 (losing U.S. salary will disallow loan payments), Ramachandran App'x 475 (loss of salary due to furlough and now termination), Seshadri App'x 743 (out of paid time off and lost salary), Janakiraman App'x 786 (lost salary from January to June), Panda App'x 1211 (furloughed without pay), Gospisetty App'x at 01097 (wife lost job because she could not remotely work), Anju Toor App'x 1083 (cannot continue research from India), Alda App'x 1244 (reduction in income).  Several Plaintiffs remain separated from their immediate family members in the United States.  *See* Albuquerque App'x 140 (separated from spouse), Poorva Dixit App'x 164 (separated from minor daughter), Dharmendra Dixit App'x 234 (separated from wife and son), Medishetti App'x 281 (child in United States), Gidugu App'x 358 (depression due to separation), Ptola App'x 694 (will miss the birth of child).

Unlike the individual H-1B and H-4 non-immigrant Indian national Plaintiffs in this case, the *Gomez* case involves a challenge, in part, by individuals seeking diversity lottery visas or relatives of family-based immigrants.  The individual plaintiffs in the two cases are pursuing different visa classifications under separate statutory provisions and the related harm they suffer is distinct in each case.  The H-1B Plaintiffs in *Panda* are deprived of income and their ability to return to their jobs in the United States because of Proclamation 10052.  It does not appear that any of the individual plaintiffs in *Gomez* are returning to the United States to resume employment in this country.  *See Gomez* Memo. in Support of Prel. Inj., ECF No. 53-1 at 49-51.  Relatedly, as employment-based non-immigrant seeking to return to the United States to perform skilled labor in positions requiring a minimum of a bachelor's degree, *see* 8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1184(i), Plaintiffs in this case fall within a special congressional policy of encouraging the importation and retention of skilled workers to fill needed labor shortages and

advance the domestic economy. *See Panda* Am. Memo., ECF No. 8 at 37-43. The individual

plaintiffs in *Gomez* do not fit that factual pattern and their case is therefore not related to the

*Panda* civil action. *See Dakota Rural Action*, 2019 U.S. Dist. LEXIS 55419, *6-7.

Although some of the plaintiffs in *Gomez* challenge, in part, the application of

Proclamation 10052 in the H-1B context, that challenge is brought by a corporate entity and a

labor organization. *See Gomez* Am. Compl., ECF No. 46 ¶¶ 31, 34, 227, 233, 258-259.

Moreover, the relevant class that the *Gomez* plaintiffs seek to have certified in connection with

the H-1B program (among other non-immigrant classifications) is limited to petitioning

employers, not individual H-1B employees like in the *Panda* case. *Id.* ¶ 300(d). As such, the

putative *Gomez* class pertaining to the H-1B program does not directly encompass the individual

H-1B Plaintiffs in *Panda*. Thus, the two cases are not sufficiently common in their underlying

facts for purposes of avoiding the random case assignment rule. *Keepseagle*, 194 F.R.D. at 3.

### D.  The *Panda* and *Gomez* Cases Involve Different Claims

The plaintiffs in *Panda* and *Gomez* challenge, in different ways, the application of

Proclamation 10052. Although the partial overlap in their respective challenges may make the

two cases colloquially related as arising out of Proclamation 10052, they nevertheless involve

different claims that militate against trigging the exception to the random assignment rule. *See*

*Comm. on Ways & Means*, 391 F. Supp. 3d at 96; *see also G.Y.J.P. v. Wolf*, 2020 U.S. Dist.

LEXIS 129513, *3 (D.D.C. July 21, 2020) (common issues of law do not make two cases

related). It is not enough that the two cases arise out of Proclamation 10052 because the

application of the Proclamation affects the Plaintiffs in each case differently. *See Dakota Rural*

*Action*, 2019 U.S. Dist. LEXIS 55419, *6-7.

The *Panda* Plaintiffs bring six causes of action challenging Proclamation 10052, including an *ultra vires* claim and three claims under the APA.  *See* Compl., ECF No. 1 ¶¶ 1963-2005.  They also raise two constitutional claims, including an equal protection claim based on the disparate impact that the Proclamation has on Indian nationals in the H-1B program.  *Id*. ¶¶ 2006-2019.  The *Panda* Plaintiffs' claims differ in at least two material respects from the claims raised in *Gomez*.

Unlike the *Gomez* Plaintiffs, the *Panda* Plaintiffs raise an additional and separate APA license suspension claim.  *Compare Panda* Compl., ECF No. 1, ¶¶ 1977-1991 with *Gomez* Am. Compl., ECF No. 46, ¶¶ 310-327.  More critically, the *Panda* Plaintiffs are all Indian nationals with a disparate impact claim under the Equal Protection Clause based on their nationality.  That constitutional claim has no place in the *Gomez* case.  Based on those diversity of claims, one of which turns on the nationality of the *Panda* Plaintiffs, the two cases are not related.  *Cf. Boyd v. Farrin*, 2012 U.S. Dist. LEXIS 174656, *5-6 (D.D.C. Dec. 10, 2012) (alternative holding) (discrimination claim distinct from statutory claim).

Nor does *Autumn Journey Hospice v. Sebelius* compel a contrary result.  The cases at issue in *Autumn Journey Hospice* each involved hospice care providers that had received a demand from the Department of Health and Human Services for the repayment of funds that had been disbursed in excess of a cap set by the Department's applicable regulation.  *See* 753 F. Supp. 2d 135, 138 (D.D.C. 2010).  Each hospice care provider then raised an identical challenge to the lawfulness of the identical repayment demands.  *Id*. at 139.  The objection to relation was overruled because each case concerned "a hospice care provider subject to recently issued cap repayment demands calculated pursuant to the same regulation."  *Id*. at 140.

Unlike the commonality of effect in *Autumn Journey Hospice*, the two sets of individual plaintiffs in *Panda* and *Gomez* suffer from Proclamation 10052 in different ways based on the distinct nationality of the *Panda* Plaintiffs and their inability to return to the United States to resume employment as skilled workers in the H-1B program.  Relatedly, the *Panda* plaintiffs have special statutory claims under the INA that are not available to the individual plaintiffs in *Gomez*.  Nor does the putative employer class in *Gomez* suffer in the same way as the employees in *Panda* who have lost income because of Proclamation 10052.  More critically, under the putative *Gomez* class, none of the *Panda* individual plaintiffs are guaranteed relief because they do not fit into that putative employer class.

### E.  Transfer by Consent

The Court's Minute Order also instructs the parties to consider whether this case should be transferred to Judge Mehta by consent among the judges.  *See* Local Rule 40.6(a).  The Court suggests that judicial economy may support such a transfer.  Plaintiffs respectfully submit that this consideration does not weigh for or against a transfer because, due to the recent nature of the challenges to Proclamation 10052, neither Judge Jackson nor Judge Mehta appear to be more familiar or have more experience with the claims and issues raised in *Panda* and *Gomez*.  *Cf. Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 40-41 (D.D.C. 2010) (courts' respective knowledge of the parties and facts is relevant for venue); *FTC v. Cephalon, Inc*., 551 F. Supp. 2d 21, 30-31 (D.D.C. 2008) ("That court's familiarity with these facts . . . supports transfer . . . for judicial efficiency purposes."); *Oil, Chemical & Atomic Workers Local Union No. 6-418*, *AFC—CIO v. NLRB*, 694 F.2d 1289, 1294 (D.C. Cir. 1982) (circuit's familiarity with the same parties and issues or related issues is relevant in considering whether to transfer venue).

Despite the apparent neutral weight of judicial efficiency in this context, Plaintiffs contend that their case should remain with Judge Jackson.  Among other reasons, Plaintiffs in this case filed their challenge to Proclamation 10052 first before any other plaintiff, and they quickly moved for a preliminary injunction, which was filed sixteen days before the *Gomez* Plaintiffs filed their motion.  As outlined in the *Panda* Plaintiffs' motion for a preliminary injunction and supporting declarations, they continue to suffer irreparable harm each and every day that Defendants persist with their unlawful conduct.  For that reason, the Plaintiffs in this case acted diligently to pursue their claims as quickly as possible and file their emergency motion for immediate relief.  The *Panda* Plaintiffs should not be penalized by further delay simply because another set of plaintiffs filed an apparently similar lawsuit and then waited more than two weeks to move for preliminary injunctive relief.

Based on the foregoing, Plaintiffs request that their case remain with Judge Jackson and that the Court address as soon as possible their motion for a preliminary injunction, which has been pending for twenty-two days.

Dated:  August 6, 2020                              Respectfully submitted,

                                                    s/Geoffrey Forney
                                                    GEOFFREY FORNEY
                                                    Bar No. PA0088
                                                    Wasden Banias LLC
                                                    411 West Ellet Street
                                                    Philadelphia, PA 19119
                                                    202-615-8315/ geoff@wasdenbanias.com

CERTIFICATE OF SERVICE

I certify that on August 6, 2020, I filed the forgoing PLAINTIFFS' RESPONSE TO THE

COURT'S ORDER REGARDING PROPOSED TRANSFER TO JUDGE MEHTA through the

Court's CM/ECF system, which will provide notice and an electronic hyperlink to this document

by automatic email transmission to the Defendants' attorneys of record in this case.

s/Geoffrey Forney
GEOFFREY FORNEY
Wasden Banias LLC