UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHANDAN PANDA, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 20-cv-1907 (APM) |
| CHAD F. WOLF, et al., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs in this case are Indian nationals who were recently residing in the United States in lawful nonimmigrant status under temporary labor petitions approved by the Department of Homeland Security. For various reasons, they traveled to India, and now must receive visas to return to the United States. *Id.* Plaintiffs allege that the United States consular offices, acting under the direction of the Secretary of Homeland Security and the Secretary of State, have withheld the adjudication of of their visa applications pursuant to the President's recently issued Presidential Proclamation 10052 (dated June 22, 2020), which suspends the entry of foreign nationals within certain categories of nonimmigrant visas. Plaintiffs ask the court to preliminarily enjoin Defendants from applying Proclamation 10052 in adjudicating their visa applications, and to order Defendants to adjudicate their applications within fourteen days.

Plaintiffs' preliminary injunction motion raises three claims, two of which overlap substantially with claims raised in a related action, *Gomez v. Trump*, 20-cv-1419 (APM). The court considered the merits of those overlapping claims in that action, and reserved for adjudication in this separate action the merits of Plaintiffs' third claim (which was not raised by the *Gomez*

Plaintiffs), along with all non-merits defenses.  For substantially the same reasons discussed in *Gomez*, the court concludes that Plaintiffs have not established that injunctive relief would prevent their irreparable harm or that an injunction would be in the public interest.  Accordingly, the court denies Plaintiffs' motion for preliminary injunctive relief.

I.

Plaintiffs in this case are 169 Indian nationals with approved H-1B skilled worker petitions and their derivative beneficiaries.  *See* Compl., *Panda v. Wolf*, 20-cv-1907 (APM), ECF No. 1 [hereinafter Compl.], at 21; *see also* Oral Arg. Tr., *Gomez v. Trump*, 20-cv-1419 (APM), ECF No. 122, at 54 (updating the court on the number of Plaintiffs in this action).  Plaintiffs were all residing and working in the United States in lawful nonimmigrant status, but for various reasons went to India[1] and now require visas to travel back to the United States.  *See* Pls.' Am. Mem. of P. & A. in Supp. of Their Mot. for a Prelim. Inj., ECF No. 8 [hereinafter Pls.' PI Mem.], at 1.  They have all submitted DS-160 applications to obtain visas that will allow them to return to the United States.  *Id.*  However, on June 22, 2020, the President issued Presidential Proclamation 10052 ("Proclamation 10052"), which suspends until December 31, 2020, the entry of foreign nationals seeking admission to the United States pursuant to specified categories of nonimmigrant visas, including the visas Plaintiffs seek, unless an applicant is eligible for an enumerated exception.  *See* 85 Fed. Reg. 38,263 (June 22, 2020).  Plaintiffs allege that "consulates are withholding a final adjudication of Plaintiffs' applications based on the application of the President's recently issued Proclamation 10052."  Pls.' PI Mem. at 1.

Plaintiffs assert that (1) the Proclamation is *ultra vires*; (2) Defendants' implementation of the Proclamation by withholding the adjudication of Plaintiffs' visa applications is arbitrary and

---

[1] One Plaintiff is currently in Canada.  Compl. ¶¶ 149, 1851–52.

capricious in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A); and (3) the suspension of Plaintiffs' approved nonimmigrant labor petitions violates the APA's procedural requirements governing the suspension of licenses, 5 U.S.C. § 558(c).  Pls.' Mem. at 24–37.  They seek a preliminary injunction (1) enjoining Defendants from applying Proclamation 10052 in adjudicating Plaintiffs' visa applications and determining whether they are admissible to the United States to resume H-1B or H-4 status, and (2) directing the Secretary of State and the United States consulates to process, adjudicate, and render final decisions on Plaintiffs' DS-160 visa applications within fourteen days.  *Id.* at 40.

The court bifurcated briefing on Plaintiffs' motion, considering the merits of Plaintiffs' first two claims alongside overlapping claims raised in a related action, *Gomez v. Trump*, 20-cv-1419 (APM).  *See* Am. Order, *Gomez v. Trump*, No. 20-cv-1419 (APM), ECF No. 79; Order, *Panda v. Wolf*, No. 20-cv-1907 (APM), ECF No. 23.  The court issued a Memorandum Opinion and Order on those issues on September 4, 2020, *see* Mem. Op. & Order, *Gomez v. Trump*, 20-cv-1419 (APM), ECF No. 123 [hereinafter *Gomez* Mem. Op.], finding that the challenges to Proclamation 10052 were unlikely to succeed on the merits, *id.* at 39–58, and that the APA challenges to Defendants' implementation of the Proclamation were likely to succeed, *id.* at 58–66.  However, the court held that only a subset of the plaintiffs in the *Gomez* action—foreign nationals seeking diversity immigrant visas—had established the additional prerequisites for injunctive relief.  *Id.* at 75–79.  In the interest of time and judicial economy, the court incorporates by reference its analysis of the overlapping issues in that case, along with its resolution of the Defendants' arguments regarding consular nonreviewability and whether Plaintiffs had identified a cause of action.  *See id.* at 34–38.

Because the court only addressed the merits of the *Panda* Plaintiffs first two claims in the *Gomez* opinion, it did not consider the merits of their third claim (whether Defendants' actions constitute an unlawful suspension of a license under 5 U.S.C. § 558(c)), or any other non-merits defenses. *See id.* at 24 n.4, 75 n.25. Now, Defendants argue that Plaintiffs lack standing and have not shown that they have suffered irreparable harm or that a preliminary injunction would be in the public interest. *See* Defs.' Opp'n to Pls.' Mot. for a Prelim. Inj., ECF No. 26 [hereinafter Defs.' Opp'n], at 10–13, 18–25. On the merits, Defendants assert that Plaintiffs do not challenge discrete final agency action, and that 5 U.S.C. § 558(c) does not apply because, among other reasons, approved H-1B nonimmigrant worker petitions are not "licenses" under the APA. *See id.* at 13–18.

## II.

"A preliminary injunction is an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). To prevail on such a motion, the movant bears the burden of showing that: (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where, as here, the federal government is the opposing party, the balance of equities and public interest factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III.

To establish standing at the preliminary injunction stage, Plaintiffs must show, based on record evidence, that it is substantially likely that at least one of them has (1) suffered a concrete and particularized injury (2) that is fairly traceable to the challenged action of the defendant and

4

(3) that is likely to be redressed by a favorable decision. *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 376–77 (D.C. Cir. 2017); *see also Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014) (noting that, where multiple plaintiffs assert the same claims, "the court need only find one plaintiff who has standing" to establish jurisdiction over the action). The redressability requirement is "relaxed" when a plaintiff alleges a procedural injury. *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305–06 (D.C. Cir. 2013). "[I]nstead of needing to establish that compelling the agency to follow the correct procedure would lead to a substantive result that favors the [plaintiff's] concrete interests, the [plaintiff] need only show that [her] concrete interests could be better protected." *Narragansett Indian Tribal Historic Pres. Office v. FERC*, 949 F.3d 8, 13 (D.C. Cir. 2020).

In support of their motion, Plaintiffs submit the declaration and visa application files of Plaintiff Yukti Bhatia. Bhatia has studied and worked in the United States for the past six years. Pls.' Mot. for a Prelim. Inj., ECF, No. 3, App'x, ECF No. 4-47 [hereinafter Pls.' App'x], at 635 ¶¶ 9–11. She is the beneficiary of an approved H-1B visa petition. *Id.* at 634 ¶¶ 4–6. Before the President issued Proclamation 10052, Bhatia had returned to India where she applied for an H-1B nonimmigrant visa by submitting a DS-160 application. *Id.* at 635–36 ¶ 11, 638. Bhatia completed her visa interview at the Indian consulate on February 10, 2020. *Id.* at 636 ¶ 12. Her application was temporarily refused pursuant to § 221(g) of the Immigration and Nationality Act, 8 U.S.C. § 1201(g), and she was asked to submit additional employer documents. *Id.* Though her employer submitted the required documents on February 19, 2020, *id.*, Bhatia heard no updates about the status of her application until July 1, 2020, when she was informed that "Embassies and Consulates will not be able to accept H1b/H4 visa applications or to continue processing of pending applications which are subject to the [Proclamation 10052]" for the duration of the Proclamation,

Pls.' App'x, ECF No. 4-48, at 648.  Bhatia reached out to the consulate in August to ask when the consulate would resume processing her visa and was told that the "Department of State temporarily will continue . . . not to issue H-1B . . . nonimmigrant visas, apart from certain exceptions as laid out in the Proclamation itself."  Pls.' Notice of Recent Agency Activity, ECF No. 24 [hereinafter Pls.' Notice], Ex. A, ECF No. 24-1, at 73.

Because of Proclamation 10052 and Defendants' refusal to adjudicate her DS-160 application, Bhatia has been unable to re-enter the country.  Due to this inability to return to the United States, she is at risk of losing her job in the United States.  Pls.' App'x, ECF 4-47, at 635 ¶ 9.  She now must pay to store her belongings in the United States (she traveled to India with only a few pairs of clothes), and she continues to pay her U.S. phone bill and other expenses.  *Id.* at 635–37 ¶¶ 9, 11, 14.  The standstill has also affected her mental health—at risk of losing all she worked to achieve in the United States, she has experienced severe mental and emotional strain, has lost weight, and worries that she will be unable to help her father repay her student loans.  *Id.* at 637 ¶ 14.

The concrete financial and emotional harms Bhatia is experiencing easily establish injury in fact, *see, e.g.*, *E.B. v. U.S. Dep't of State*, 422 F. Supp. 3d 81, 86–87 (D.D.C. 2019); Defendants do not contend otherwise.  Instead, Defendants focus their attacks on the causation and redressability requirements of standing.  On the causation front, Defendants maintain that Plaintiffs "allege injuries related to the adjudications of visa applications or in the scheduling of visa application interviews, none of which are traceable to the issuance of the Proclamation," and stress that "Plaintiffs' applications have not yet been completed, so they can only speculate—and without basis—that the Proclamation affects their claims."  Defs.' Opp'n at 11.  This is a surprising position, given Defendants' insistence in the *Gomez* briefing that the "legal consequences that

6

Plaintiffs challenge"—i.e., the suspension of adjudication of their visa applications—"flow from the Proclamations." Defs.' Opp'n to Pls.' Mot. for Prelim. Inj., *Gomez v. Trump*, 20-cv-1419 (APM), ECF No. 94, at 31.  It is also is blatantly contradicted by the record evidence before the court.  As discussed at length in the court's *Gomez* opinion, Defendants have interpreted Proclamation 10052 to suspend the issuance of all covered, non-exempt nonimmigrant visas, *see Gomez* Mem. Op. at 12–14, and the *Panda* Plaintiffs, including Bhatia, have received communications from the State Department confirming that their applications are not being processed due to the Proclamation, *see, e.g.*, Pls.' Notice, Ex. A at 73–74 (stating in response to Ms. Bhatia's inquiries that "[u]nder the Proclamation, the Department of State temporarily will . . . not issue H-1B, H-2B, L, and certain J nonimmigrant visas, and their derivative visa categories for family members, apart from certain exceptions as laid out in the Proclamation itself."). Bhatia's injuries are traceable to Proclamation 10052 and Defendants' implementation thereof.

      Defendants also assert that Bhatia's injuries are not redressable "given the very limited nature of consular operations across the world at this time." Defs.' Opp'n at 13.  They foretell that it is "unlikely" that Bhatia and the other *Panda* Plaintiffs "would have their visa interviews scheduled, or their visas adjudicated, absent a showing of emergency circumstances and eligibility for an exception." *Id.*  That is wrong for multiple reasons.  First, if Bhatia succeeds on the merits of her claims, she would not need to demonstrate "eligibility for an exception" to Proclamation 10052—Defendants would be enjoined from refusing to adjudicate her visa application based on the Proclamation.  *See* Pls.' Mem. at 40; *see also Estate of Boyland v. U.S. Dep't of Agric.*, 913 F.3d 117, 123 (D.C. Cir. 2019) (stating that, when considering a plaintiff's standing, a federal court must assume the merits of his or her legal claim).  Second, in addition to other forms of injury, Bhatia has alleged a procedural injury—that Defendants have "refus[ed] to make a decision on

[her] pending DS160" application, *see* Compl. ¶ 1691—meaning that she need only show that a favorable decision "*could* . . . change the substantive outcome in [her] favor." *Narragansett*, 949 F.3d at 13 (emphasis added).  While the Indian consular offices have not resumed routine visa operations, they are open and capable of processing at least some visa applications, and Defendants have not shown that it would be impossible to process Bhatia's visa.  *See* Pls.' Notice (documenting two H-4 visas granted); Pls.' Reply in Supp. of Their Mot. for Prelim. Inj., ECF No. 28 [hereinafter Pls.' Reply], Ex. E, ECF No. 28-3 (H-1B visa stamp issued by the Indian consulate on August 10, 2020).  Bhatia has therefore established a substantial likelihood that her procedural injury can be redressed.[2]

In sum, Bhatia has a substantial likelihood of standing, and the court therefore has subject-matter jurisdiction over each claim raised in this case.  *See Mendoza*, 754 F.3d at 1010.

IV.

Though the court must assume the merits of Plaintiffs' claims for purposes of assessing their standing, the same is not true when assessing Plaintiffs' entitlement to injunctive relief.  As discussed in *Gomez* (and incorporated by reference in this decision), Plaintiffs are unlikely to succeed on the merits of their claim that Proclamation 10052 is *ultra vires*.  *See Gomez* Mem. Op. at 39–58.  For that reason, the court denied the *Gomez* non-diversity visa plaintiffs' requests for preliminary injunctive relief, holding that they had not established that their irreparable harm

---

[2] The court acknowledges that it has already determined that the *Panda* Plaintiffs are unlikely to succeed on their claim that the Proclamation is unlawful.  *See Gomez* Mem. Op. at 38–54.  If Plaintiffs do not ultimately succeed on that claim, the concrete harms underlying Bhatia's and her co-Plaintiffs' procedural injuries ("the loss of income . . . separation from their family members . . . [and] the inability to tend to their financial affairs and real property in the United States, *see* Pls.' Mem. at 21) cannot be remedied by a favorable decision on Plaintiffs' APA claims.  However, the court has not yet rendered a final decision on this issue, and it must assume for standing purposes that Plaintiffs will succeed on *all* their claims, including their challenge to the Proclamation.  *See Estate of Boyland*, 913 F.3d at 123.

would be redressable by the requested injunctive relief or that such relief would be in the public interest. *Id.* at 75–79. The same goes for the *Panda* Plaintiffs' request for injunctive relief.

*Irreparable Harm.* "[T]he basis of injunctive relief in the federal courts has always been irreparable harm . . . ." *Sampson v. Murray*, 415 U.S. 61, 88 (1974) (cleaned up). "[T]o demonstrate irreparable harm, 'the movant must show that the alleged harm will directly result from the action which the movant seeks to enjoin,'" *E.B. v. U.S. Dep't of State*, 422 F. Supp. 3d at 88 (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)), and that the court's injunction is likely to "eliminate the harm that already exists," *Ass'n of Flight Attendants-CWA, AFL-CIO v. Pension Ben. Guar. Corp.*, 372 F. Supp. 2d 91, 102 (D.D.C. 2005) (cleaned up); *see also Hispanic Affairs Project v. Perez*, 141 F. Supp. 3d 60, 69 (D.D.C. 2015) (denying preliminary injunctive relief where "the injunctive relief requested would not necessarily help this plaintiff"). "[C]ourts generally will not base a finding of irreparable injury on a procedural violation standing alone." *Elk Assocs. Funding Corp. v. U.S. Small Bus. Admin.*, 858 F. Supp. 2d 1, 31 (D.D.C. 2012) (cleaned up).

As discussed, this court has already held that Plaintiffs are unlikely to succeed on their challenges to Proclamation 10052, *Gomez* Mem. Op. at 39–58, and so the ban on Plaintiffs' entry into the United States will remain regardless of whether they succeed on their APA challenges to Defendants' withholding of adjudication of their visa applications. Thus, Plaintiffs' claimed irreparable harms—"lost income" and "the inability to return to the United States to resume employment or rejoin family members . . . or tend to their property in the United States," Pls.' Mem. at 38—will persist even if the court requires Defendants to adjudicate their visa applications: Proclamation 10052 will continue to prevent Plaintiffs from "return[ing] to the United States" to resume employment and reunite with family members. Plaintiffs have therefore not met their

burden of demonstrating that an injunction is likely to "eliminate the harm that already exists." *Ass'n of Flight Attendants*, 372 F. Supp. 2d at 102 (cleaned up).

*Public Interests.* Preliminary injunctive relief would not serve the public interest for much the same reasons. Plaintiffs seek an order directing the Secretary of State and the United States consulates "to process, adjudicate, and render final decisions on Plaintiffs' DS-160 visa applications within fourteen (14) days of the date of this Court's order," Pls.' Mem. at 40, but requiring such swift processing would be an exercise in futility when Plaintiffs would remain ineligible to enter the country until January 1, 2021, at the earliest.[3] Such an order would risk diverting limited resources away from visa applicants who are eligible under an exception to the Proclamation, and could create substantial confusion for visa recipients attempting to enter the country only to be denied at ports of entry.

V.

On the merits, the court has already determined that Plaintiffs are unlikely to succeed on their *ultra vires* challenge to the Proclamation, and are likely to succeed on their APA challenge that Defendants' suspension of processing their visas pursuant to the Proclamation is arbitrary and capricious. *Gomez* Mem. Op. at 39–66. That leaves Plaintiffs' third claim—that the suspension of Plaintiffs' approved nonimmigrant labor petitions violates the APA's procedural requirements governing the suspension of licenses, 5 U.S.C. § 558(c). *See* Pls.' Mem. at 36–37. The court does not decide whether Plaintiffs are likely to succeed on the merits of this claim, because, as discussed, Plaintiffs have not met the other requirements for injunctive relief. *See Chaplaincy of*

---

[3] It is also unclear whether H-1B and H-4 visas issued to Plaintiffs within fourteen days of the court's order would be valid after January 1, 2021. *See* 8 U.S.C. § 1201(c)(2) (providing that "[a] nonimmigrant visa shall be valid for such periods as shall be by regulations prescribed."); 22 CFR § 41.112(c) (stating that, in general, "a nonimmigrant visa shall have the validity prescribed in schedules provided to consular officers by the Department"); Pls.' Reply, Ex. E (H-1B visa stamp from the Indian consulate with an expiration date of less than three months).

*Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (explaining that "[a] movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief.").

## VI.

In sum, Plaintiffs have standing to bring their claims, but because Plaintiffs are unlikely to succeed on their challenge to Proclamation 10052, an injunction would not remedy their claimed irreparable harms and would not be in the public interest. Therefore, the court denies Plaintiffs' Motion for a Preliminary Injunction, ECF No. 3.

Dated: September 16, 2020

Amit P. Mehta
United States District Court Judge